IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BIANCA FLETCHER                                                                      PLAINTIFF

V.                                          NO. 4:20-CV-521 LPR

NITV FEDERAL SERVICES, LLC;
GENE SHOOK; AND JOHN DOES 1-2                                         DEFENDANTS

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.  Introduction

This diversity action arises from Plaintiff's termination from employment with the Arkansas Department of Corrections ("ADC") based on Plaintiff's theory that computer voice stress analysis ("CVSA") equipment sold by NITV Federal Services, LLC to ADC caused Plaintiff's termination. Specifically, Plaintiff alleges that the CVSA equipment, which is used to attempt to detect deception during in-person interviews, was defective and generated erroneous results as a part of an internal ADC investigation.   The CVSA was used as part of an investigation into whether Ms. Fletcher brought contraband into the prison after a body scanner indicated the presence of a foreign object on Ms. Fletcher's person as she was attempting to enter the prison.   Plaintiff and a co-worker were terminated by Warden Aundrea Culclager after the ADC investigation, and Warden Culclager's decision was affirmed at the conclusion of Ms. Fletcher's internal appeal on the basis that Ms. Fletcher, in fact, entered the prison with contraband.

Plaintiff asserts five causes of action against Defendants: (1) that the CVSA system was defective within the meaning of the Arkansas Products Liability Act; (2) defamation/false light; (3) illegal exaction; (4) negligence; (5) and violation of the Arkansas Deceptive Trade Practices Act.

All of Plaintiff's claims fail as a matter of law. As a threshold matter, Plaintiff's claims are barred by the doctrine of acquired immunity as recognized under Arkansas law. Similarly, there is

no evidence of causation between Defendants' product and Plaintiff's damages, such that all of Plaintiff's claims fail as a matter of law. And, as discussed below, Defendants are entitled to summary judgment on each of Plaintiff's individual claims. The use of the CVSA equipment is expressly authorized by both statutory and regulatory law in Arkansas. Finally, separate Defendant Gene Shook is entitled to summary judgment on all of Plaintiff's claims in his individual capacity. Defendants now move for summary judgment.

## II. Factual background

Bianca Fletcher was employed as a Correctional Officer II with the Arkansas Department of Correction until her termination in May 2019. She worked at the Tucker Maximum Security Unit. (SUMF ¶ 1).  To enter the Tucker Maximum Security Unit, each individual removes his or her shoes and belt and is scanned using an Adani body scanner and a cellular signal scanner.  Entrants' personal property is scanned by x-ray machine, and entrants must pass through a metal detector. Entrants are also typically administered a "pat" search before entry is permitted. If any entry test or search is unsuccessful or inconclusive after multiple attempts, ADC personnel may perform a strip search with the entrant's consent.  (SUMF ¶ 2).  The Adani scanner creates an image of the entrant's body and reveals any foreign objects or contraband. When a scan detects an object that cannot be identified by ADC personnel, the entrant is required to be re-scanned by the Adani scanner.  If the second scan is inconclusive, the entrant is requested to consent to a strip search before being re-scanned by the Adani scanner.  (SUMF ¶ 3).

On April 30, 2019, Plaintiff reported for work and was scanned twice using the Adani body scanner. Both scans revealed an anomaly believed to be contraband in the area of Plaintiff's pelvis. (SUMF ¶ 4).  Ms. Fletcher believed that the Adani scanner was wrong and is frequently wrong; even

so, she did not sue the manufacturer of the Adani scanner.  (SUMF ¶ 4).  The detection of potential contraband triggered an investigation.

Aundrea Culclager served as a warden at the time of the ADC investigation at issue in this lawsuit.  By the time of her deposition, Ms. Culclager had been promoted to superintendent.  She served with the ADC for 32 years with the following ranks: corporal, sergeant, lieutenant, captain, major, deputy warden, warden, and finally superintendent.   She holds an undergraduate degree and a master's degree.  (SUMF ¶ 5).  Warden Culclager oversaw the investigation and ultimate termination of Ms. Fletcher and Captain Nicola Kelly.

Following the two positive scans on the Adani scanner, Ms. Fletcher was escorted by ADC personnel into the facility for a strip search to be conducted. As described by Warden Culclager in her deposition, during the escort prior to the strip search, surveillance footage appears to show Ms. Fletcher passing an object to ADC Captain Nicola Kelly, who places the object in her back pocket. (SUMF ¶ 6).  During the strip search, Plaintiff revealed that she had a bank card, which is considered contraband, in her back pocket.  (SUMF ¶ 7).  After the strip search, Plaintiff returned to the entrance where another body scan was performed, this time with negative results.  Plaintiff was tested for controlled substances, and her vehicle was searched before she was sent home by Warden Aundrea Culclager.  (SUMF ¶ 8).

ADC policy permits the use of computer voice stress analysis in connection with internal affairs and investigations. ADC Administrative Directive 17-16 provides procedural safeguards and expressly provides that "(t)he requesting authority will not sustain a complaint against an employee solely on the basis of computerized voice stress analysis results. There must be at least one additional item of corroborating evidence in the written report completed by the investigating office in order for the requesting authority to sustain the complaint."  (SUMF ¶ 9).  Furthermore, the computer

voice stress analyzer software and system developed by NITV Federal Services, LLC, is marketed as an investigative tool only.  The licensing agreement between ADC and NITV Federal Services, LLC expressly provides that the "results of any testing should not be used as a final determinant." (SUMF ¶ 10).

In connection with the incident on April 30, 2019, Ms. Fletcher was interviewed and underwent a computer voice stress analysis conducted by ADC Investigator Donna Best on May 2, 2019. (SUMF ¶ 11).  Following an interview and a computer voice stress analysis of Nicola Kelly, who was also terminated, Ms. Fletcher was interviewed a second time and underwent a second computer voice stress analysis conducted by ADC Investigator Donna Best on May 3, 2019.  (SUMF ¶ 12).  In addition to Ms. Fletcher, ADC Investigator Donna Best interviewed Nicola Kelly, Sergeant Cora Harris, and Officer Jasmine Releford, and ADC Investigator Donna Best also reviewed incident reports, surveillance footage, Adani scan imaging, and other internal documents.  (SUMF ¶ 13).

Ms. Fletcher's first computer voice stress analysis was inconclusive.  Her second computer voice stress analysis indicated deception in connection with questions related to Plaintiff's communication and dealings with Nicola Kelly.  (SUMF ¶ 14).  Captain Kelly was interviewed and was asked whether Ms. Fletcher passed contraband to her.  Captain Kelly initially denied that Fletcher passed contraband to her, but then said, "If she did, it was a piece of paper, but I don't even remember her doing that."  (SUMF ¶ 15) (emphasis supplied).

In her interview, Captain Kelly also denied having a personal relationship with Ms. Fletcher and denied having the type of relationship where they would have one another's phone number. (SUMF ¶ 16).  However, Ms. Fletcher admitted in her deposition that she had Captain Kelly's number saved in her phone.  (SUMF ¶ 16).  Ms. Fletcher described interactions with Captain Kelly

that caused Warden Culclager concern.  Namely, Ms. Fletcher testified that she had applied to become a sergeant, and she further admitted that Captain Nicola Kelly gave her answers to the sergeant's exam in advance.  (SUMF ¶ 17).  When discussing this event, Ms. Culclager testified that Captain Kelly could have been disciplined for providing Fletcher with answers to the sergeant's exam; that was not supposed to happen.  (SUMF ¶ 17).  Captain Kelly's conduct indicated to Warden Culclager that Captain Kelly was biased in favor of Ms. Fletcher.  (SUMF ¶ 17).

Ultimately, it was Ms. Culclager's observation that Ms. Fletcher and Captain Kelly provided inconsistent statements "concerning their knowledge of one another." (SUMF ¶ 18).  This caused Ms. Culclager to conclude that one of them, or perhaps both of them were being untruthful.  (SUMF ¶ 18).  Accordingly, Ms. Culclager did not rely on the CVSA exam when concluding that Ms. Fletcher and/or Captain Kelly were being untruthful. (SUMF ¶ 18).

Warden Culclager also reviewed the images from the Adani scanner in conjunction with the investigation.  Although Ms. Fletcher believes the scanner showed a "false positive" on the two scans, Ms. Culclager reviewed the scans and believed the scans were accurate based on her observations of the location of the positive finding, the size of the positive finding, and the defined shape of the positive finding.  (SUMF ¶ 19).  Ms. Culclager circled the positive finding on the images contained at pages 109, 110, and 111 in Exhibit 9 to her deposition transcript.  (SUMF ¶ 19).

Based on the findings of ADC Investigator Donna Best, the surveillance footage, incident reports, Adani scan imaging, and other internal documents, Warden Culclager terminated Ms. Fletcher as of May 16, 2019, for violation of Administrative Directive 12-33, which prohibits violation of ADC policies, unsatisfactory work performance, and falsification of information provided to ADC.  (SUMF ¶ 20).  Aundrea Culclager confirmed that her termination decision was based on and supported by evidence other than the computer voice stress analyses:

Q. All right. We have a situation where you're investigating potential contraband being brought into a prison, correct?

A. Yes.

Q. You have interviewed the person who had two positive scans showing at least a potential that something is there, correct?

A. Yes.

Q. You have surveillance video that makes it sure look like something was handed off, correct?

A. Yes.

Q. You have Captain Kelly immediately going to the restroom, which was an opportunity for her to discard what it made it look like on the video that she had been handed, correct?

  MR. GILLHAM: Object to form.

A. Yes.

Q. You interviewed Ms. Fletcher and Ms. Kelly, and they provided inconsistent statements to you concerning their knowledge of one another, correct?

  MR. GILLHAM: Objection form.

A. Yes.

Q. Do (sic) you form the belief that one or both of them were lying to you at the time, correct?

  MR. GILLHAM: Objection form.

A. Yes.

Q. You did not need the CVSA exam to tell you that they were lying to you, did you?

  MR. GILLHAM: Object to form.

A. No.

Q. Given the circumstances of this termination and the fact that you had inconsistent statements, surveillance video, Adani scanner showing the presence of an object, and

especially with the fact that one or both had lied to you, was there any way that you could allow them to remain employed with Arkansas Department of Corrections?

      MR. GILLHAM: Objection form.

A. No.

Q. And you didn't need the CVSA exam to tell you that, did you?

      MR. GILLHAM: Objection form.

A. No.

Q. Based on what you know today, would you have terminated both of those individuals even if the CVSA exam had not been performed?

      MR. GILLHAM: Objection form.

A. Yes.

(SUMF ¶ 22).

Plaintiff initiated an administrative appeal of her termination, resulting in a hearing; Warden Culclager's termination decision was ultimately affirmed and upheld by the Office of Personnel Management on the basis that Plaintiff attempted to enter the facility with a bank card, which Plaintiff conceded during the investigation. (SUMF ¶ 21).

Ms. Fletcher is personally unaware of any wrongdoing on the part of Mr. Shook or NITV Federal Services. (SUMF ¶ 23). Ms. Fletcher is personally unaware of any false statements made by separate Defendant Gene Shook. (SUMF ¶ 24). Ms. Fletcher is personally unaware of any false statements made by separate Defendant NITV Federal Services, LLC. (SUMF ¶ 25). Ms. Fletcher is personally unaware of any fraud or deception committed by Defendants. (SUMF ¶ 26). Ms. Fletcher is personally unaware of any negligence on the part of separate Defendant Gene Shook. (SUMF ¶ 27). Ms. Fletcher is

personally unaware of any negligence on the part of separate NITV Federal Services, LLC. (SUMF ¶ 28).

NITV Federal Services and Mr. Shook contend that Ms. Fletcher cannot present proof of the essential elements on any of the causes of action alleged.  Ms. Culclager's termination decision would have occurred regardless of whether or not the CVSA device was "defective," and moreover, the ultimate decision to uphold the termination of Ms. Fletcher by the Office of Personnel Management was based on the single undisputed fact that Ms. Fletcher brought contraband into the prison...a bank card, "and the only disciplinary action available to the Division was termination."  (SUMF ¶ 21).

### III.  Law and Argument

**A.**      **Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). As the Eighth Circuit Court of Appeals has explained: "[o]n a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano,* 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material

facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

"'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci,* 129 S. Ct. at 2677 (quoting *Matsushita,* 475 U.S. at 587); *see also Torgerson v. City of Rochester,* 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*). Summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.,* 433 F.3d 617, 620 (8th Cir. 2006); *Harvey v. AB Electrolux,* 9 F. Supp. 3d 950, 957-58 (N.D. Iowa 2014).

## B.   Plaintiff's claims fail as a matter of law for lack of causation.

All of Plaintiff's claims fail as a matter of law for lack of proof of causation. The undisputed evidence establishes that the CVSA equipment was not the cause of Plaintiff's termination from ADC, which is the foundation of all her claims. Instead, Plaintiff's termination was based on ADC's other investigative findings, and the undisputed deposition testimony establishes that Plaintiff would have been terminated from ADC regardless of the CVSA result and regardless if the CVSA was even administered. Because there is no evidence of causation, Plaintiff's claims fail as a matter of law.

Under Arkansas, all causes of action require sufficient proof of causation, and damages cannot be based on speculation or conjecture. *See Hill v. Maxwell,* 247 Ark. 811, 448 S.W.2d 9 (1969); *Gregory v. Walker,* 239 Ark. 415, 389 S.W.2d 892 (1965); *Superior Forwarding Co. v. Garner,* 236 Ark. 340, 366 S.W.2d 290 (1963); *Sumlin v. Woodson,* 211 Ark. 214, 199 S.W.2d 936 (1947); *see also Black v. Rowen,* 2013 Ark. App. 349, at 6. It is well settled that "[d]amages must arise from the wrongful acts of the breaching party." *Spann v. Lovett & Co.,* 2012 Ark. App. 107, at 16, 389

S.W.3d 77, 91; *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 258, 987 S.W.2d 722, 728 (1999). Arkansas law requires more than a mere possibility of causation; a reasonable probability must be established. *See Davis v. Kemp*, 252 Ark. 925, 927, 481 S.W.2d 712, 713 (1972).

The purpose of the CVSA is to assist in the detection of deception. Here, Ms. Culclager had concluded that Ms. Fletcher and Ms. Kelly were deceptive without the use of the CVSA. (SUMF ¶¶ 15-19, 22). Here, there is no evidence of causation to sustain Plaintiff's claims. Warden Aundrea Culclager testified that, following the internal investigation, her initial decision to terminate Plaintiff's employment was independent of the CVSA tests. Warden Aundrea Culclager further testified that she would terminate Plaintiff even without the CVSA being performed based on other evidence gathered during the investigation. (SUMF ¶ 22). The CVSA results were cumulative to the data used by Ms. Culclager in making her decision; in the absence of Warden Culclager's material reliance on the CVSA exams, there is no causal nexus between the exams and Ms. Fletcher's termination. There no evidence to establish a reasonable probability of causation as required by Arkansas law. Accordingly, summary judgment is proper on all of Plaintiff's claims.

Finally, Ms. Culclager's termination decision would have occurred regardless of whether or not the CVSA device was "defective" because the ultimate decision to uphold the termination of Ms. Fletcher by the Office of Personnel Management was based on the single undisputed fact. That fact was that Ms. Fletcher brought contraband into the prison...a bank card, "and the only disciplinary action available to the Division was termination." (SUMF ¶ 21). The existence of the bank card has nothing to do with, and is completely independent of the CVSA exams.

C.   **Summary judgment is proper under the acquired immunity doctrine.**

All of Plaintiff's claims are governed by Arkansas law. *See Scott v. Martin*, No. 4:14CV00246 JLH, 2015 U.S. Dist. LEXIS 182549, at *6 (E.D. Ark. Jan. 21, 2015). It is clear under controlling

law that Ms. Fletcher's claims, if brought directly against the ADC, would fail because the Arkansas Department of Corrections is immune from suit for the causes of action alleged. *Morrison v. Ark. Dep't of Corr.*, 2009 U.S. Dist. LEXIS 54397, 2009 WL 1850304 (granting summary judgment to ADC in suit brought by employee; state law tort claims dismissed because ADC was immune from suit on those claims). *See also Lincoln v. Arkansas*, 2009 U.S. Dist. LEXIS 29497, 2009 WL 943548. By virtue of the agreement with the Arkansas Department of Corrections (ADC), a state agency, Defendants acquired the state's sovereign immunity. There are no disputed facts related to the immunity acquired by Defendant through the contract with ADC. Defendants move for summary judgment on the basis of acquired immunity and for Plaintiff's claims to be dismissed with prejudice.

The acquired immunity doctrine provides that a contractor who performs work in accordance with the terms of a contract with a governmental agency and under the supervision of the governmental agency is not liable for damage resulting from that performance. *See Smith v. Rogers Group, Inc.*, 348 Ark. 241, 250, 72 S.W.3d 450, 455 (2002). Under this doctrine, a contractor for a public agency, "shares the sovereign immunity of the public body from liability for incidental damages necessarily involved in the performance of the contract." *Id.* "The purpose of this immunity is to protect the contractor who performs the work as specified from bearing the brunt of liability based on the actions or decision made solely by the governmental agency." *Id.* at 251, 456; *see also Price v. Thomas Built Buses, Inc.*, 370 Ark. 405, 260 S.W.3d 300 (2007); *Barker v. Rogers Grp., Inc.*, 74 Ark. App. 18, 25, 45 S.W.3d 389, 394 (2001); *Guerin Contractors, Inc. v. Reaves*, 270 Ark. 710, 713, 606 S.W.2d 143, 144; *Se. Constr. Co. v. Ellis*, 233 Ark. 72, 342 S.W.2d 485 (1961). Sovereign immunity is jurisdictional immunity from suit. *Smith v. Daniel*, 2014 Ark. 519, 452 S.W.3d 575, 589.

Plaintiff's claims are premised on the use of CVSA equipment by ADC personnel during an internal investigation. Consequently, Defendants are entitled to dismissal with prejudice under the acquired-immunity doctrine. The CVSA equipment was used pursuant to an agreement with ADC, an entity of the State of Arkansas, and the equipment was physically used and operated by an employee of ADC. (SUMF ¶¶ 9-10). Defendants cannot be liable to Plaintiff under her theories of recovery, and the acquired-immunity doctrine bars the present action. Defendants are immune from suit, and all of Plaintiff's claims should be dismissed with prejudice.

D.   **Defendants are entitled to summary judgment on the merits of the product liability claim because there is no evidence of bodily injury, death, or property damage to support Plaintiff's claim.**

Plaintiff's products liability claim fails as a matter of law because there is no evidence of bodily injury, death, or property damage. (Doc. 2). Plaintiff cannot state a cognizable claim under the Arkansas Product Liability Act, Ark. Code Ann. § 16-116-201, *et seq.*, absent personal injury, death, or property damage. Ark. Code Ann. § 16-116-102(5); *see also Harrell v. Madison Cty. Miss. Mote Co.*, 370 F.3d 760, 762 (8th Cir. 2004). Here, there are no allegations or evidence of bodily injury, death, or property damage. Therefore, summary judgment on Plaintiff's claim alleging a "design defect" is proper.

Similarly, any strict liability case requires proof that a product was supplied in a defective condition that rendered it unreasonably dangerous.  *See* Ark. Code Ann. § 4-86-102(a)(2). There is no evidence that the CVSA equipment is unreasonably dangerous. *See Boerner v. Brown & Williamson Tobacco Co.*, 126 F. Supp. 2d 1160 (E.D. Ark. 1999); *see also* AMI (Civil) 1008 (2020) (compiling cases). "The mere fact that under certain circumstances an accident may occur in connection with the use of a product does not make the product unreasonably dangerous for purposes of strict liability." *Elk Corp. of Arkansas v. Jackson*, 291 Ark. 448, 454, 725 S.W.2d 829 (1987).  "A defective

condition alone is not enough. The defective condition must render the product 'unreasonably dangerous.'" *Mason v. Mitcham*, 2011 Ark. App. 189, at 4, 382 S.W.3d 717. "The [Arkansas] products-liability statute and section 402A [Restatement (Second) of Torts] define unreasonably dangerous as requiring something beyond that contemplated by the ordinary and reasonable buyer, taking into account any special knowledge of the buyer concerning characteristics, propensities, risks, dangers, and proper and improper uses of the product." *Id.* at 5 (citing *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 392, 653 S.W.2d 128 (1983)).  A plaintiff must demonstrate more than the product simply did not perform "as a reasonable consumer would expect" in order to establish that a product is unreasonably dangerous. *Ruminer v. GMC*, 483 F.3d 561, 564 (8th Cir. 2007).

A CVSA system is not an "unreasonably dangerous" product under Arkansas law. *See Farm Bureau Ins. Co. v. Case Corp.*, 317 Ark. 467, 878 S.W.2d 741, (1994) (tractor catching fire); *Blagg v. Fred Hunt Co.*, 272 Ark. 185, 612 S.W.2d 321 (1981) (flooring that contained formaldehyde); *Ford Motor Co. v. Massey*, 313 Ark. 345, 855 S.W.2d 897 (1993) (sudden acceleration of a vehicle without warning); *Buchanna v. Diehl Mach.*, 98 F.3d 366 (8th Cir. 1996) (handsaw with defective lighting).

Moreover, the use of CVSA equipment is authorized and regulated by the Arkansas General Assembly, Ark. Code Ann. § 17-39-301, et seq., and administrative rules promulgated by the Division of Arkansas State Police. *See* 130-00-015 Ark. Code R. §§ 1–12 (2020) ("Rules for Licensing and Regulation of Private Investigators, Private Security Agencies, Alarm Systems Companies, Polygraph Examiners, and Voice Stress Analysis Examiners"). More specifically, the Arkansas Board of Corrections expressly authorizes the ADC to use CVSA equipment in connection with internal affairs and investigations. 004-00-001 Ark. Code R. § 014(IV)(B) (2020). The ADC, in turn,

promulgated administrative directives for the use of CVSA equipment during investigations, which were followed during Plaintiff's investigation. (SUMF ¶ 9).

The use of CVSA equipment during a formal ADC investigation is not an unreasonably dangerous condition. This is nothing more than a "foreseeable consequence" of using the product, and a product that is "merely inadequate" is insufficient to deem a product unreasonably dangerous under Arkansas law. *See Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983). For these reasons, the products liability claim fails as a matter of law.

### E.   There is no evidence of defamation by Defendants.

Defendants are entitled to summary judgment on Plaintiff's defamation claim for numerous reasons. A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 955-56, 69 S.W.3d 393, 402 (2002) (compiling cases). Six elements must be proved to support a claim of defamation, whether it be by the spoken word (slander) or the written word (libel): (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Id.*

Plaintiff's defamation claim is premised on the results of two CVSA tests administered to her during the ADC investigation. The CVSA tests were performed pursuant to state law and ADC administrative directives, and the only "statements" by Defendants consist of a summary of the questions asked by the examiner and a diagram of Plaintiff's voice stress when she responded to each question. (SUMF ¶ 13, 14). This data was then interpreted by the certified examiner, in this case Donna Best. (SUMF ¶ 13, 14). Thus, there is no evidence of the defamatory nature of the "statements" by Defendants. "A subjective interpretation of multiple objective data points leading

to a subjective conclusion" is not "sufficiently factual to be susceptible of being proved true or false." *Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864, 871 (8th Cir. 2005). A defamation claim based on raw data cannot proceed where "other interpretations [of the data] exist. Consequently, remarks on a subject lending itself to multiple interpretations cannot be the basis of a successful defamation action because as a matter of law no threshold showing of 'falsity' is possible in such circumstances." *McClure v. Am. Family Mut. Ins. Co.*, 223 F.3d 845, 853 (8th Cir. 2000).

While Plaintiff does not agree with the eventual interpretation of the exam data by Donna Best and ADC personnel, there is no evidence that the datasets generated by the CVSA were defamatory. Plaintiff does not challenge the data itself but the subsequent interpretation of the data. There is no evidence that the data generated during the CVSA examinations is a false statement within the meaning of Arkansas defamation law.  Ms. Fletcher candidly admits that she is personally unaware of any false statements made by separate Defendant Gene Shook (SUMF ¶ 24) or NITV Federal Services, LLC. (SUMF ¶ 25).

Additionally, there is no evidence of the Defendants' "fault" in the publication of the CVSA test results. The CVSA examination was ordered and conducted by ADC personnel in connection with a formal ADC investigation. SUMF ¶ 11-14. The CVSA equipment was in the possession and control of ADC, not Defendants, and Defendants did not commence or undertake to examine Plaintiff. And while the CVSA system generated the results of the exam, the results were generated by Donna Best at the direction of Warden Aundrea Culclager and other state personnel in connection with the investigation. There is no evidence of Defendants' "fault" in the publication of the allegedly defamatory statements.

Finally, there is no evidence of the statement's falsity. As discussed above, Plaintiff challenges the subjective interpretations of the data generated by the CVSA equipment. This is not a proper

basis for a defamation claim under Arkansas law, and Defendants are entitled to summary judgment on Plaintiff's defamation claim. And, for all the reasons and authorities discussed above, Plaintiff's alternative false light claim fails as a matter of law.[1] There is no evidence of any false light that would be highly offensive to a reasonable person, and there is no evidence that Defendants knew, or acted in reckless disregard of, the falsity of the publicized matter and the false light in which the plaintiff would be placed.

**F.    Plaintiff's fraud and illegal exaction claim fails as a matter of law.**

Plaintiff alleges Defendants defrauded the State of Arkansas, resulting in an illegal exaction of tax dollars. This claim is meritless and directly foreclosed by the Arkansas Supreme Court's decision in *Bowerman v. Takeda Pharm. U.S.A.*, 2014 Ark. 388, 442 S.W.3d 839 (discussing both types of illegal exaction cases). Before a public-funds type of illegal exaction, which is what Plaintiff alleges, will be allowed to proceed, "there must be facts showing that monies generated from tax dollars or arising from taxation are being misapplied or illegally spent." *Bowerman v. Takeda Pharm. U.S.A.*, 2014 Ark. 388, at 5-6, 442 S.W.3d 839, 843 (citing *Dockery v. Morgan*, 2011 Ark. 94, 380 S.W.3d 377. Therefore, in order to state a claim for an illegal exaction, a plaintiff "must allege that the expenditure was illegal, misapplied, or arbitrary." *Id.* Where the expenditure is authorized by state law, an illegal exaction claim fails as a matter of law. *Id.*

As discussed above, the use of CVSA equipment is authorized and regulated by state statute, state regulations, and administrative directives of ADC. The CVSA equipment at issue was used in connection with a formal ADC investigation pursuant to state law. (SUMF ¶ 11-14). Plaintiff does

---

[1] A false-light/invasion-of-privacy claim has two essential elements: the complaining party must show (1) that the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant knew, or acted in reckless disregard of, the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Pingatore v. Union Pac. R.R. Co.*, 2017 Ark. App. 459, at 10, 530 S.W.3d 372, 379.

not allege illegal, misapplied, or arbitrary expenditure by the ADC or the state, and there is no evidence to sustain any such claim. Plaintiff' references to fraud are conclusory, at best, and "[o]pinions, legal conclusions and bare assertions" are insufficient to defeat summary judgment. *Handle v. Little Rock*, 772 F. Supp. 434, 435 (E.D. Ark. 1991). Plaintiff's illegal exaction claim is contrary to Arkansas law and fails as a matter of law.

As for any fraud allegation, Ms. Fletcher candidly admits that she is aware of no false statement uttered by either defendant or fraud committed by either defendant, and therefore she could not have relied on any such statement, a necessary element to fraud. *See, e.g.*, AMI Civil § 402 (2020); (SUMF ¶¶ 23-26).

> **G.     There is no evidence of negligence on the part of Defendants.**

As stated above, there is no evidence that Defendants knew or should have known the subject CVSA equipment was defective or presented any risk of harm.  There is no evidence that Defendant failed to do something that a reasonable person would do under similar circumstances.  *See Serv. Commc'ns, Inc. v. Wells*, 279 Ark. 378, 381, 651 S.W.2d 100, 101 (1983); AMI (Civil) 302 (2020) (compiling cases).  Furthermore, there is no evidence that Mr. Shook breached any applicable standard with respect to his conduct.  After all, the CVSA is designed merely to serve as an investigative tool only, and the "results of any testing should not be used as a final determinant." (SUMF ¶ 10).

Because there is no evidence defendant knew, or should have known, the subject CVSA equipment was defective as Plaintiff alleges, there is certainly no evidence that defendant acted intentionally. *See Doe v. Baum*, 348 Ark. 259, 278, 72 S.W.3d 476 (2002) (defining "reckless negligence" as "the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to

make it highly probable that harm would follow."). Again, there is no evidence that any conduct of Mr. Shook or NITV Federal Services, LLC proximately caused damages to Ms. Fletcher.  For the reasons and authorities discussed above, Plaintiff's negligence claim fails as a matter of law.

### H.   There is no evidence to support Plaintiff's ADTPA claim.

There is no evidence that Defendant knowingly engaged in any conduct in an effort to deceive plaintiff into purchasing the subject CVSA. In *Boshears, et al. v. Certainteed Corporation*, 2007 U.S. Dist. LEXIS 34338 (E. D. Ark. 2007), the Court stated:

> To be liable under the Arkansas Unfair and Deceptive Trade Practices Act, Defendants must have 'knowingly' engaged in 'deceptive and unconscionable trade practices.' The Act also imposes a causation element by requiring, 'actual damage or injury as a result of the offense or violation.'  Deceptive conduct includes making a false representation about the characteristics or certification of goods.  There is also a catch-all provision which prohibits 'any other unconscionable, false, deceptive act or practice.

*Id.* at 14-15 (citing Ark. Code Ann §§ 4-88-101 – 115, 4-88-107(a), 4-88-113(f), 4-88-107(a)(1) and 4-88-107(a)(10).  The crux of an ADTPA claim is that a plaintiff must demonstrate the defendant acted "knowingly."  A plaintiff must show that the defendant knew the product was defective and made material misrepresentations in order to induce plaintiff to buy a faulty product. *See McAnally v. Gildersleeve*, 16 F.3d 1493 (8th Cir. 1994) (applying Arkansas common law and holding that plaintiff must demonstrate that a defendant knew the misrepresentation was false when made). The allegedly prohibited conduct must be considered in light of trade practices. *See Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 887–88 (E.D. Ark. 2008), *aff'd*, 552 F.3d 659 (8th Cir. 2009).

In the present case, Plaintiff did not purchase the CVSA equipment from Defendants. (SUMF ¶¶ 9-10).  Consequently, it is impossible for Defendants to have made any representations to Plaintiff as to the quality and nature of the CVSA equipment, and there is no evidence that Defendants knowingly made false representations regarding same.

In addition, Plaintiff's ADTPA claim is barred by the Act's own provisions: The ADTPA contains a safe-harbor provision for "[a]ctions or transactions specifically permitted under laws administered by ... [any] regulatory body or officer acting under statutory authority of this state." Ark. Code Ann. § 4-88-101(3). The ADTPA precludes claims when the actions or transactions fall within the safe-harbor provision. *Air Evac EMS, Inc. v. Usable Mut. Ins. Co.*, 2017 Ark. 368, at 6, 533 S.W.3d 572, 575-76.

As discussed above, the use of CVSA equipment is authorized and regulated by the Arkansas General Assembly, Ark. Code Ann. § 17-39-301, et seq., and administrative rules promulgated by the Division of Arkansas State Police. *See* 130-00-015 Ark. Code R. §§ 1–12 (2020) ("Rules for Licensing and Regulation of Private Investigators, Private Security Agencies, Alarm Systems Companies, Polygraph Examiners, and Voice Stress Analysis Examiners"). The Arkansas State Police regulations are promulgated pursuant to state statute. Furthermore, the Arkansas Board of Corrections expressly authorizes the ADC to use CVSA equipment in connection with internal affairs and investigations. 004-00-001 Ark. Code R. § 014(IV)(B) ("The Internal Affairs Division, or its successor, shall utilize various investigative procedures and tools to conduct and assist in those investigations. Those tools may include, but are not limited to polygraph examinations, and computerized voice stress analysis.").

In this case, the Internal Affairs Division of ADC used CVSA equipment in connection with an internal investigation. This lawfully authorized and specific conduct falls squarely into the safe-harbor provision of the ADTPA, which bars Plaintiff's claim as a matter of law. *See Air Evac EMS, Inc. v. Usable Mut. Ins. Co.*, 2017 Ark. 368, at 6, 533 S.W.3d 572, 575-76 (holding that the ADTPA's safe-harbor provision precludes claims when the "actions or transactions at issue have been specifically permitted or

authorized under laws administered by a state or federal regulatory body or officer"). On this separate basis, Defendants are entitled to summary judgment on Plaintiff's ADTPA claim.

I.     **Gene Shook is entitled to summary judgment in his individual capacity.**

Defendants, collectively, are entitled to summary judgment on all of Plaintiff's claims for the reasons discussed above. Separate Defendant Gene Shook, an independent contractor, is separately entitled to summary judgment in his individual capacity. There is no evidence Gene Shook designed, manufactured, supplied, or sold the CVSA system. There is no evidence of any defamatory or false statement by Gene Shook. There is no evidence that ADC or the State of Arkansas paid funds to Gene Shook. There is no evidence that Gene Shook had any interaction with Plaintiff, and there is no evidence of any duty that was breached by Mr. Shook which proximately caused damages to Ms. Fletcher, as is necessary to support a negligence claim. Finally, Gene Shook did not sell the CVSA to Plaintiff or ADC, and there is no evidence of deceptive conduct or any other violation of the Arkansas Deceptive Trade Practices Act.

**IV.  Conclusion**

All of Plaintiff's claims fail as a matter of law. There no genuine issues of material fact, and summary judgment in favor of Defendants is proper. Accordingly, the present motion should be granted in full.

WHEREFORE, NITV Federal Services, LLC, and Gene Shook, respectfully request that their Motion for Summary Judgment be granted and for all other just and proper relief to which they may be entitled.

Respectfully submitted,

James D. Robertson, Arkansas BIN 95181
jrobertson@barberlawfirm.com
Adam D. Franks, Arkansas BIN 2016124
afranks@barberlawfirm.com
**BARBER LAW FIRM PLLC**
*Attorneys for NITV Federal Services, LLC*
*and Gene Shook*
425 W. Capitol Avenue, Suite 3400
Little Rock, AR  72201
(501) 372-6175/(501) 375-2802 (Fax)