IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BIANCA FLETCHER                                                                                           PLAINTIFF

V.                                          NO. 4:20-CV-521 LPR

NITV FEDERAL SERVICES, LLC;
GENE SHOOK; and JOHN DOES 1-2                                                              DEFENDANTS

### DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Come now Defendants, NITV Federal Services, LLC, and Gene Shook, by and through their counsel, Barber Law Firm PLLC, and submit the following material facts as to which they contend there are no genuine issues to be tried, as part of its Motion for Summary Judgment, and pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Eastern District of Arkansas, do hereby state:

1. Bianca Fletcher was employed as a Correctional Officer II with the Arkansas Department of Correction until her termination in April and May of 2019. (Doc. 2 ¶¶ 4–5). She worked at the Tucker Maximum Security Unit. **Exhibit 1**, Deposition of Bianca Fletcher, p. 12:4-5.

2. To enter the Tucker Maximum Security Unit, each individual removes his or her shoes and belt and is scanned using an Adani body scanner and a cellular signal scanner. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 14:4-15:25. Entrants' personal property is scanned by x-ray machine, and entrants must pass through a metal detector. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 22-23 and ADC Administrative Directive 14-44 (Ex. 1, ADC 0237–0242). Entrants are also administered a "pat" search before entry is permitted. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 14:4-15:25. If any entry test or search is unsuccessful or inconclusive after multiple attempts, ADC personnel may perform a strip search with the entrant's consent. **Exhibit 2**,

Deposition of Aundrea Culclager, pp. 22-23 and ADC Administrative Directive 14-44 (Ex. 1, ADC 0237–0242).

3. The Adani scanner creates an image of the entrant's body and reveals any foreign objects or contraband. **Exhibit 2**, Deposition of Aundrea Culclager, p. 16:1-11. When a scan detects an object that cannot be identified by ADC personnel, the entrant is required to be re-scanned by the Adani scanner. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 16:12-17:6. If the second scan is inconclusive, the entrant is requested to consent to a strip search before being re-scanned by the Adani scanner. *Id.*

4. On April 30, 2019, Plaintiff reported for work and was scanned twice using the Adani body scanner. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 81:13-82:6. Both scans revealed an anomaly believed to be contraband in the area of Plaintiff's pelvis. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 87:14-88:8; **Exhibit 2**, Deposition of Aundrea Culclager, pp. 52-53 and ADC images dated April 30, 2019 (Ex. 9, ADC 0177-0186). Ms. Fletcher believed that the Adani scanner was wrong and is frequently wrong; however, she did not sue the manufacturer of the Adani scanner. **Exhibit 1**, Deposition of Bianca Fletcher, p. 129.

5. Aundrea Culclager served as a warden at the time of the ADC investigation at issue in this lawsuit. By the time of her deposition, Ms. Culclager had been promoted to superintendent. She served with the ADC for 32 years with the following ranks: corporal, sergeant, lieutenant, captain, major, deputy warden, warden, and finally superintendent. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 10:5-11:14. She holds an undergraduate degree and a master's degree. *Id.*

6. Plaintiff was escorted by ADC personnel into the facility for a strip search to be conducted. **Exhibit 1**, Deposition of Bianca Fletcher, p. 82:10-83:17. During the escort and prior to the strip search, surveillance footage indicates Plaintiff passed an object to ADC Captain Nicola Kelly, who placed the object in her back pocket. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 37-42 and ADC images dated April 30, 2019 (Ex. 9, ADC 0175-0176).

7. During the strip search, Plaintiff revealed that she had a bank card, which is considered contraband, in her back pocket. **Exhibit 1**, Deposition of Bianca Fletcher, p. 86:3-11.

8. After the strip search, Plaintiff returned to the entrance where another body scan was performed, this time with negative results. **Exhibit 1**, Deposition of Bianca Fletcher, p. 88:9-24. Plaintiff was tested for controlled substances, and her vehicle was searched before she was sent home by Warden Aundrea Culclager. *Id.*

9. ADC policy permits the use of computer voice stress analysis in connection with internal affairs and investigations. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 26-27 and Administrative Directive 17-16 (Ex. 3, pp. ADC 0042–0051). ADC Administrative Directive 17-16 provides procedural safeguards and expressly provides that "(t)he requesting authority will not sustain a complaint against an employee solely on the basis of computerized voice stress analysis results. There must be at least one additional item of corroborating evidence in the written report completed by the investigating office in order for the requesting authority to sustain the complaint." **Exhibit 2**, Deposition of Aundrea Culclager, pp. 26-27 and Administrative Directive 17-16 (Ex. 3, p. ADC 0046).

10. The computer voice stress analyzer software and system developed by NITV Federal Services, LLC, is marketed as an investigative tool only. **Exhibit 2**, Deposition of Aundrea

Culclager, pp. 25-26 and End-User License Agreement for CVSA Software between ADC and NITV Federal Services, LLC (Ex. 2, pp. NITV 000001-000003). The licensing agreement between ADC and NITV Federal Services, LLC expressly provides that the "results of any testing should not be used as a final determinant." *Id.*

11. In connection with the incident on April 30, 2019, Plaintiff was interviewed and underwent a computer voice stress analysis conducted by ADC Investigator Donna Best on May 2, 2019. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 89:2-16, 90:12-91:10.

12. Following an interview and a computer voice stress analysis of Nicola Kelly, who was also terminated, Plaintiff was interviewed a second time and underwent a second computer voice stress analysis conducted by ADC Investigator Donna Best on May 3, 2019. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 92:12-94:9.

13. In addition to Plaintiff, ADC Investigator Donna Best interviewed Nicola Kelly, Sergeant Cora Harris, and Officer Jasmine Releford. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 35-37 and Final Report of ADC Internal Affairs, IAD Case Number 19-178 (Ex. 8, pp. ADC 0259-0269). ADC Investigator Donna Best reviewed incident reports, surveillance footage, Adani scan imaging, and other internal documents. *Id.*

14. Plaintiff's first computer voice stress analysis was inconclusive. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 35-37 and Final Report of ADC Internal Affairs, IAD Case Number 19-178 (Ex. 8, p. ADC 0268). Plaintiff's second computer voice stress analysis indicated deception in connection with questions related to Plaintiff's communication and dealings with Nicola Kelly. *Id.*

15. Captain Kelly was interviewed and asked whether Ms. Fletcher passed contraband to her. Captain Kelly initially denied that Fletcher passed contraband to her, but then said, "If she did, it was a piece of paper, but I don't even remember her doing that." **Exhibit 2**, Deposition of Aundrea Culclager, pp. 41.

16. In her interview, Captain Kelly denied having a personal relationship with Ms. Fletcher and denied having the type of relationship where they would have one another's phone number. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 46. However, Ms. Fletcher admitted in her deposition that she had Captain Kelly's number saved in her phone. **Exhibit 1**, Deposition of Bianca Fletcher, p. 79.

17. Ms. Fletcher testified that she had applied to become a sergeant. She further admitted that Captain Nicola Kelly gave her answers to the sergeant's exam in advance. **Exhibit 1**, Deposition of Bianca Fletcher, p. 70. Ms. Culclager testified that Captain Kelly could have been disciplined for providing Fletcher with answers to the sergeant's exam; that was not supposed to happen. **Exhibit 2**, Deposition of Aundrea Culclager, p. 57. Captain Kelly's conduct indicated to then Warden Culclager that Captain Kelly was biased in favor of Ms. Fletcher. **Exhibit 2**, Deposition of Aundrea Culclager, p. 58.

18. Ultimately, it was Ms. Culclager's observation that Ms. Fletcher and Captain Kelly provided inconsistent statements "concerning their knowledge of one another." **Exhibit 2**, Deposition of Aundrea Culclager, p. 59. This caused Ms. Culclager to conclude that one of them, or perhaps both of them were being untruthful. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 46-47. Ms. Culclager did not rely on the CVSA exam when concluding that Ms. Fletcher and/or Captain Kelly were being untruthful to her. **Exhibit 2**, Deposition of Aundrea Culclager, p. 46.

19. Warden Culclager also reviewed the images from the Adani scanner in conjunction with the investigation. Although Ms. Fletcher believes the scanner showed a "false positive" on the two scans, Ms. Culclager reviewed the scans and believed the scans were accurate based on her observations of the location of the positive finding, the size of the positive finding, and the defined shape of the positive finding. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 53-55. Ms. Culclager circled the positive finding on pages 109, 110, and 111 in Exhibit 9 to her deposition transcript. **Exhibit 2**, Deposition of Aundrea Culclager, pp. 37-42 and ADC images dated April 30, 2019 (Ex. 9, ADC 0177-0186).

20. Based on the findings of ADC Investigator Donna Best, the surveillance footage, incident reports, Adani scan imaging, and other internal documents, Warden Culclager terminated Ms. Fletcher as of May 16, 2019, for violation of Administrative Directive 12-33, which prohibits violation of ADC policies, unsatisfactory work performance, and falsification of information provided to ADC. **Exhibit 1**, Deposition of Bianca Fletcher, pp. and Letter dated May 20, 2019, from Aundrea Culclager regarding Plaintiff's termination (Ex. 5, ADC 0452-0454).

21. Plaintiff initiated an administrative appeal of her termination, which was ultimately affirmed and upheld by the Office of Personnel Management on the basis that Plaintiff attempted to enter the facility with a bank card, which Plaintiff conceded during the investigation. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 86:3-11, 100:15-101:3 and Final report of SEGAP case #2019-S34 dated January 10, 2020 (Ex. 8, ADC 0052-0053).

22. Aundrea Culclager confirmed that her termination decision was based on and supported by evidence other than the computer voice stress analyses:

> Q. All right. We have a situation where you're investigating potential contraband being brought into a prison, correct?

A. Yes.

Q. You have interviewed the person who had two positive scans showing at least a potential that something is there, correct?

A. Yes.

Q. You have surveillance video that makes it sure look like something was handed off, correct?

A. Yes.

Q. You have Captain Kelly immediately going to the restroom, which was an opportunity for her to discard what it made it look like on the video that she had been handed, correct?

    MR. GILLHAM: Object to form.

A. Yes.

Q. You interviewed Ms. Fletcher and Ms. Kelly, and they provided inconsistent statements to you concerning their knowledge of one another, correct?

    MR. GILLHAM: Objection form.

A. Yes.

Q. Do (sic) you form the belief that one or both of them were lying to you at the time, correct?

    MR. GILLHAM: Objection form.

A. Yes.

Q. You did not need the CVSA exam to tell you that they were lying to you, did you?

    MR. GILLHAM: Object to form.

A. No.

Q. Given the circumstances of this termination and the fact that you had inconsistent statements, surveillance video, Adani scanner showing the presence of

an object, and especially with the fact that one or both had lied to you, was there any way that you could allow them to remain employed with Arkansas Department of Corrections?

    MR. GILLHAM: Objection form.

A. No.

Q. And you didn't need the CVSA exam to tell you that, did you?

    MR. GILLHAM: Objection form.

A. No.

Q. Based on what you know today, would you have terminated both of those individuals even if the CVSA exam had not been performed?

    MR. GILLHAM: Objection form.

A. Yes.

**Exhibit 2**, Deposition of Aundrea Culclager, pp. 58:9-60:8.

    23.    Ms. Fletcher is personally unaware of any wrongdoing on the part of Mr. Shook or NITV Federal Services. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 136-137.

    24.    Ms. Fletcher is personally unaware of any false statements made by separate Defendant Gene Shook. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 139:1-3.

    25.    Ms. Fletcher is personally unaware of any false statements made by separate Defendant NITV Federal Services, LLC. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 139:10-13.

    26.    Ms. Fletcher is personally unaware of any fraud or deception committed by Defendants. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 139:4-9.

    27.    Ms. Fletcher is personally unaware of any negligence on the part of separate Defendant Gene Shook. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 139:15-20.

28. Ms. Fletcher is personally unaware of any negligence on the part of separate NITV Federal Services, LLC. **Exhibit 1**, Deposition of Bianca Fletcher, pp. 139:21-140:1.

WHEREFORE, Defendants, NITV Federal Services, LLC, and Gene Shook respectfully requests that their Motion for Summary Judgment be granted and for all other just and proper relief to which it may be entitled.

    Respectfully submitted,

    James D. Robertson AR BIN 95181
    Email:  jrobertson@barberlawfirm.com
    Adam D. Franks AR BIN 2016124
    Email: afranks@barberlawfirm.com
    BARBER LAW FIRM PLLC
    *Attorneys for Defendant*
    425 West Capitol Avenue, Suite 3400
    Little Rock, AR  72201
    (501) 372-6175 / (501) 375-2802 (fax)