IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BIANCA FLETCHER**                                                                                      **PLAINTIFF**

vs.                                    CASE NO. 4:20-CV-521-LPR

**NITV, LLC; NITV FEDERAL SERVICES, LLC;
CHARLES HUMBLE; GENE SHOOK; and
JOHN DOES 1-2**                                                                                        **DEFENDANTS**

<u>PLAINTIFF'S SUR-REPLY TO THE MOTION FOR SUMMARY JUDGMENT</u>

COMES NOW THE PLAINTIFF, by and through counsel, who for her Surreply states:

Defendant filed a Reply that contains numerous false statements. Plaintiff now corrects them.

<u>COMPLIANCE WITH RULE 56(d)</u>

Chief among these false statements is that Rule 56(d) was not complied with because there was not an affidavit. That is wrong - the Rule 56(d) Motion is styled as being Verified, and at the end, undersigned counsel signed it as required for a sworn statement without the use of a notary under federal law. D.E. 19, p. 1, 10, par. 32. Defendants argued that much of the evidence submitted, such as the SEGAP hearing was unsworn. But that is the point of the Rule 56(d) motion - it gives plaintiff time to go get evidence, since we are still in the discovery phase of this lawsuit. Plaintiff provided SEGAP testimony, which with the chance to take depositions, or get a verified copy of the file from ADC will be sworn. The studies cited establish the kind of expert testimony and basis for it that could be used to create fact issues. The cases and television articles cited where false positives occurred also establish avenues for discovery given that NITV made admissions that their device does not work.

Defendant also claimed that Plaintiff made a bunch of vague assertions without describing what facts she hoped to elicit by further discovery. This also was a blatantly false mischaracterization of the Rule 56(d) Motion.

Defendant argued Plaintiff did not respond to the statement of undisputed facts, but

CAUSATION

Defendants argued causation on all claims.  The argument was that Plaintiff would have been fired regardless of the CVSA results, based on three things: (1) Culclager's testimony in deposition that she would have done so on the strength of the other evidence of guilt; (2) loss of the grievance in it's later stages, which meant that the termination was affirmed; and (3) their warranty and ADC policy says it is not to be a determinative factor.

As to Culclager's cited testimony had valid objections to the form arising from leading questioning were made at each question, and the testimony is not competent evidence. That alone should relieve Plaintiff of the obligation to respond with facts.  If the evidence was incompetent, it cannot be used at summary judgment.   Furthermore, the testimony assumes her credibility with a jury.  In addition, it is contradicted by the fact that Culclager previously testified that the CVSA was a factor (See D.E. 19, para. 6(h)), and Arkansas recognizes multiple proximate causes.  *Blythe v. Byrd*, 251 Ark. 363, 364, 472 S.W.2d 717, 718 (1971).  In addition, a look at the other evidence of guilt reveals it is non-existent to slight in weight. D.E. 19, para. 6-14.   Plaintiff submitted the SEGAP materials (D.E. 19-1), and can obtain sworn testimony there through deposition.

Finally, Culclager testified that she made the decision to terminate (D.E. 19, para. 6(h)). Plaintiff grieved the termination, and ultimately lost, but the most logical inference is that if Culclagerr had not fired Plaintiff, then Plaintiff would not have had a grievance to lose. Furthermore, Ms. Fecher's decision apparently rested on the bankcard, but Culclager said she would not terminate, or even discipline, because someone accidentally brought in a bank card. Deposition of the person deciding the grievance would provide evidence that Culclager, not the secretary, made the termination decision and the CVSA was a causal factor. D.E. 19, para. 6(h)-(i), 11.

Plaintiff indicated that she wanted the testimony of other ADC personnel to firm up these points.  D.E. 19, para. 4, 24, 31

DEFECTIVE AND UNREASONABLY DANGEROUS

Defendants argued that their product was neither defective nor unreasonably dangerous on their products liability claims, and that plaintiff had no evidence of such. Defendants then argued that Plaintiff had not specififed, under oath, what kind of evidence might be obtained through discovery to provide such facts.  This latter allegation is false.

First, Plaintiff's Rule 56(d) Motion was verified. D.E. 19, p. 1, 10.

Second, Plaintiff referred the Court: (a) to scholarly articles that indicate these devices do not work; (b) admissions by NITV in Court that they do not work; and (c) admissions on television news articles where NITV personnel admitted the devices do not work. D.E. 19, para. 14, 16, 17, 19, 21.

Third, Plaintiff referred the Court to situations where false arrests were made based on CVSA results, and false confessions obtained, and life, liberty, and property lost. D.E. 19, par. 16.

Fourth, Plaintiff referred the court to evidence that indicates the CVSA device was advertised as being accurate and the deception detection device of choice among law enforcement. D.E. 19, para. 15, 19.

Fifth, there is evidence in the record that the CVSA device was the primary basis for finding her guilty, and firing Fletcher.  D.E 19, para. 6-13, 21.

Sixth, Plaintiff indicated that she wanted to take depositions of NITV and ADC personnel to firm up these points, and form the basis for expert reports and testimony. D.E. 19, para. 4, 31.

NEGLIGENCE

Defendants argued they were not negligent in the creation and sale of their product. They claim there is no evidence they knew or should have known their equipment was defective or presented any risk of harm.   Plaintiff pointed to evidence she was pursuing which would indicate that the device did not work, and that Defendant knew it did not work, yet sold it anyway, including: (a) her denial; (b) the unreliability of the ADANI scanner; (c) the fact that

statements Culclager claimed were suspicious were in fact innocous, easily explained, and not made by Fletcher; (d) she passed the CVSA test the first time; (e) scholarly articles indicating the devices do not work; (f) NITV admissions the devices do not work; and (g) a lack of scientific studies indicating the devices work. D.E. 19, para. 6-14, 16, 17, 19, 21, 22.

ACQUIRED IMMUNITY

Defendants argued the doctrine of acquired immunity was applicable to them on all claims.  There is insurance in this case, and Ark. Code Ann. 19-10-305(a)   indicates that immunity is only applicable to to the extent not covered by liability insurance.   However, Plainitiff noted that acquired immunity was only applicable where it was a state contractor, working to state specs under state supervision, that carried out its assigned duties without negligence.

Plaintiff pointed out that NITV is not a contractor, but an entity that sold some devices to the state. Plaintiff wanted to do discovery into the relationship of ADC and NITV to firm this up. D.E. 19, para. 23.

Plaintiff pointed out that NITV was not working under state supervision, that it created the devices, that the state did not set specs, and that NITV provided the training, and backup on the cold calls. Plaintiff wanted to do discovery into the relationship of ADC and NITV to firm this up. D.E. 19, para. 23.

Plaintiff pointed out that scholarly work in the field indicates CVSA devices do not work. D.E. 19, para. 16, 17, 19.  Plaintiff pointed out that the device did not work in this instance, in that Plaintiff passed the first test. D.E. 19, paraa. 6(j).  Plaintiff pointed out that NITV was apparently aware of these flaws in their devices, since they admitted that they do not detect truth/deception in the Crowe case, and on a television journalist show.  D.E. 19, para. 14, 16.  Defendant Shook admitted in his SEGAP hearing that it was advertised as an accurate device for determining true and false statements, and there was other evidence that advertising position as well. D.E. 19, para. 15, 20.  That is at a minimum negligent, if not worse, conduct, which precludes application of acquired immunity.

Any one of those fact issues would preclude summary judgment for Defendant. Plaintiff notes that no proof in support of this defense was provided, so there should be no summary judgment anyway. Plaintiff indicated that he wanted to take depositions of ADC personnel and NITV personnel to firm up these points. D.E. 19, para. 4, 31.

DEFAMATION AND INVASION OF PRIVACY

Defendants argued that there was no defamation or invasion of privacy claim against Shook or NITV. Defendant argues there was no evidence that: (a) defamatory statements were made; (b) that there was evidence of false light highly offensive to a reasonable person; and (c) that Defendant knew the statements were false, or acted in reckless isregard of the falsity of publicized matter.

Plaintiff pointed to the SEGAP hearing in which Shook admitted that he told ADC that Fletcher was deceptive. D.E. 19, para. 14, D.E. 19-1, Ex. A, p. 3-8.

As to the false and defamatory nature of statements that Fletcher was deceptive, Plaintiff described existing and potential evidence of the falsity of the statements, including: (a) her denial; (b) the unreliability of the ADANI scanner; (c) the fact that statements Culclager claimed were suspicious were in fact innocous, easily explained, and not made by Fletcher; (d) she passed the CVSA test the first time; (e) scholarly articles indicating the devices do not work; (f) NITV admissions the devices do not work; and (g) a lack of scientific studies indicating the devices work. D.E. 19, para. 6-14, 16, 17, 19, 21, 27.

As to false light, all the evidence above would go to these issues.

As to fault - negligent or worse mental state, the knowledge on the part of the defendants of the false and misleading nature of Shook's statements, all the evidence above could go to establish that knowledge. D.E. 19, para. 14, 16, 17, 19, 27, 28. Furthermore, Plaintiff indicated she wanted to take Shook's deposition to establish that his knowledge of this, or the laack of foundation for his statements that Fletcher was dishonest. D.E. 19, par. 4, 21, 26-28.

As to NITV's responsibility for Shook's statements, Plaintiff needed to do depositions and discovery into their relationship to establish that responsnibility, and asked for that chance. D.E. 19, para. 31.

ILLEGAL EXACTION/FRAUD

Plaintiff, if given the chance to do discovery, can show that Defendants sold the state a device that they claim detects truth and deception, when it in fact does not.  D.E. 19, para. 6-13, 16, 17, 19, 21. That states an illegal exaction claim. D.E. 19, para. 24.  Plaintiff asked to be able to do depositions to establish these facts.  D.E. 19, ara. 4, 24, 31.

 Respectfully submitted,

**Lucien R. Gillham, ARBN 99-199**
Attorneys for the Plaintiff
**SUTTER & GILLHAM, P.L.L.C.**
P.O. Box 2012
Benton, AR 72018
501/315-1910  Office
501/315-1916  Facsimile
lucien.gillham@gmail.com